## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JEREMY JOHN GIBSON,

      Petitioner,               CASE NO. 2:11-CV-10604

v.                          HONORABLE ARTHUR J. TARNOW UNITED
                            STATES DISTRICT JUDGE

CINDI CURTIN,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Jeremy John Gibson, ("Petitioner"), presently confined at the Ryan Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree criminal sexual conduct, M.C.L.A. 750.520b(f); and for being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Monroe County Circuit Court.

Darlene Folmar, the complainant in this case, testified that on November 28, 2004, she drank 6 to 8 beers while watching a football game at a friend's house. Folmar did not consume any food at that time, but had taken prescription Darvocet to relieve ovary pain. Folmar acknowledged that the combination of Darvocet and beer

1

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

"possibly" made her feel more intoxicated than if she had merely been drinking. (Tr. 3/17/2008, pp. 43, 45, 57-58).  At 7 p.m., Folmar left her friend's house and went to a hospital to visit a friend. (*Id.,* p. 43).  While walking towards the hospital, Folmar noticed petitioner watching her from across the street.  Folmar indicated that she "had a bad vibe" from him.  Folmar testified that petitioner grabbed her, pulled her down the river walk, and sexually assaulted her by engaging in forcible vaginal intercourse with Folmar. (*Id.,* pp. 46-49).  Although Folmar asked petitioner what he was doing as he pulled her pants down, Folmar did not tell petitioner that she did not want to have sexual intercourse with him. (*Id.,* pp. 69-70).

Following the assault, Folmar went to a store to purchase cigarettes.  Folmar informed the cashier that she had just been raped, but the cashier thought that Folmar "was drunk and babbling."  Although Folmar had a cell phone, she did not call the police nor anyone else. (*Id.,* pp. 70-72).  Folmar went to the hospital where, instead of going to the emergency room, she went to her friend's room and informed him that she had been raped. (*Id.,* pp. 50, 72).  Folmar was subsequently examined in the emergency room, where her only wounds were "some bruises and scratches, scrapes ... mainly on my back and shoulder."  Folmar indicated that she had suffered no injury to her vagina. (*Id.,* pp. 51, 73).  Two years later, Folmar positively identified petitioner in a photographic lineup. (*Id.,* pp. 52-54).

Officer Terese Herrick of the Monroe Police interviewed Folmar at the hospital but could not remember if she was visibly upset.  Herrick requested that a sexual assault examination be performed on Folmar by the hospital. (*Id.,* p. 79).

2

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

Hospital Nurse Emma Linzy conducted a sexual assault examination on Folmar at the hospital. (*Id.,* pp. 84, 88).  Folmar had two abrasions on her back and a red marking at her cervix, but this marking did not appear to be an injury.  Linzy could not determine what caused the marking or whether ir was recent. (*Id.,* pp. 99-100, 106).  Linzy noticed no vaginal injuries and indicated that the bruises on the victim's back could be consistent with having consensual sexual intercourse on the ground. (*Id.,* pp. 103, 107-08).

Detective Brett Ansel of the Monroe Police Department interviewed Folmar at the police station later that night, where she appeared "rather reserved, quiet." (*Id.,* p. 119).  Two years later, Folmar picked petitioner out of a photograph array. (*Id.,* pp. 126-27).  Ansel obtained a buccal swap of petitioner's cheek and sent it to the Michigan State Police to perform a DNA test. (*Id.* p. 130).  Ansel also interviewed petitioner.  A tape of that interview was played for the jury. (*Id.,* p. 133).

Dr. Timothy Vayder examined Folmar at the hospital on the night of the incident.  The doctor acknowledged that there was no way to determine whether Folmar's vaginal marking was caused by consensual or forced intercourse. (*Id.,* pp. 140, 147).

Heather Vitta, a forensic scientist that the State Police Crime Laboratory, determined that a DNA sample taken from Folmar's vaginal area matched a DNA sample from petitioner that was in their laboratory's database.  Vitta requested that Detective Ansel collect a second DNA sample from petitioner. (*Id.,* pp. 158-59).

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

Lynne Helton, also a forensic scientist at the State Police Crime Laboratory, testified that petitioner's second DNA profile also matched the DNA taken from Folmar's vagina. (*Id.,* p. 170).

Scott Rice was an inmate who had been incarcerated in the jail cell next to petitioner's in the Monroe County Jail.  On April 30, 2007, Rice contacted Detective Ansel and informed the detective that petitioner had spoken with him about his case. Petitioner told Rice that he had beat the kidnapping charge and that all he had to do was beat the rape charge. (*Id.,* p. 177).  Rice was asked whether petitioner told him whether Folmar consented to have sex with him and Rice answered:

> He laughed about it because he said even though he raped her he didn't leave no marks on her, no bruises, so therefore they didn't have no rape charge, is what he said.

(*Id.,* p. 181).

Rice also testified that petitioner offered to pay him money to kill Folmar before trial, even giving Rice suggestions as to how to kill her. (*Id.,* p. 184).  Petitioner also told Rice he "put it in her for 30 seconds" and that the "only DNA they would have is from the cum." (*Id.,* p. 199-200).  Rice testified that after petitioner made all these admissions to him, he later wore a wire and recorded additional conversations with petitioner. (*Id.,* p. 190).

Petitioner testified in his own behalf.  Petitioner testified that he was drinking beer in a park near the river walk when he saw Folmar yelling, screaming and waving her hand in the air.  Petitioner told her to go down the road, since he was on parole and did not want to get into trouble for drinking.  Folmar disregarded petitioner's request and

4

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

asked him if he had a joint of marijuana.  After making a brief call on his cell phone, the

two talked for a while and then had consensual sex.  Petitioner did not remember this

event when Ansel interviewed him two years later. (*Id.,* pp. 212-15).

Detective Ansel testified in rebuttal that petitioner did not inform him that he had

consensual sex with an intoxicated woman when he interviewed petitioner. (*Id.,* p. 218).

When Ansel began to testify about the contents of the conversations that Rice recorded

with petitioner, defense counsel objected on

two grounds: That it was hearsay within hearsay and and that the best evidence rule

demanded admission of the tapes rather than Ansel's testimony about them. (*Id.,* pp.

219-22).  The court overruled defense counsel's objections.  Ansel testified about the

precise manner in which petitioner asked Rice to kill Folmar. (*Id.* at 221-22).

Petitioner's conviction was affirmed on appeal but his case was remanded to the

trial court for him to be re-sentenced as a third felony habitual offender. *People v.

Gibson,* No. 285486 (Mich.Ct.App. September 22, 2009); *Iv. Den.* 485 Mich. 1127, 779

N.W.2d 514 (2010).  On June 3, 2010, petitioner was re-sentenced as a third felony

habitual offender.  The Michigan Court of Appeals affirmed his re-sentencing. *People v.

Gibson,* No. 298924 (Mich.Ct.App. January 28, 2011).  Petitioner did not file an

application for leave to appeal to the Michigan Suprme Court.

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  DID THE PROSECUTOR DENY MR. GIBSON HIS FIFTH, SIXTH AND
FOURTEENTH AMENDMENTS RIGHT TO PRESENT A DEFENSE AND TO
TESTIFY WHEN SHE ARGUED, WITHOUT ANY CAUSE SPECIFIC
SUPPORT, THAT HE WAS THE ONLY TESTIFYING WITNESS WHO HAD
A MOTIVE TO LIE?

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

II.   WAS MR. GIBSON DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN AFTER MR. GIBSON HAD BEEN ARRAIGNED AND COUNSEL APPOINTED, DETECTIVE ANSEL PURPOSEFULLY ASKED A JAIL PRISONER TO WEAR A RECORDING WIRE AND ENGAGE MR. GIBSON IN CONVERSATION ABOUT THIS CASE AND WHEN THE PROSECUTOR RELIED ON ANSEL'S TESTIMONY DESCRIBING MR. GIBSON'S RECORDED STATEMENTS OBTAINED THEREIN AS EVIDENCE OF MR. GIBSON'S GUILT?

III.   MR. GIBSON WAS DENIED DUE PROCESS WHEN THE PROSECUTOR INTENTIONALLY WAITED TO AFTER HE HAD TESTIFIED TO OFFER IN REBUTTAL ANSEL'S TESTIMONY REGARDING MR. GIBSON'S EFFORTS TO HAVE [THE VICTIM] KILLED EVEN THOUGHT IT WAS THE PROSECUTOR WHO INTRODUCED THIS MATTER IN HER CASE IN CHIEF AND EVEN THOUGH MR. GIBSON OFFERED NO TESTIMONY WHATSOEVER ON THIS ISSUE.

IV. MR. GIBSON WAS WRONGFULLY CONVICTED AND SENTENCED TO A 444 MONTH MINIMUM SENTENCE AS A FOURTH HABITUAL OFFENDER BECAUSE THE UNDERLYING ACT FOR THE PRESENT CONVICTION OCCURRED PRIOR TO THE TWO RESISTING AND OBSTRUCTING CONVICTIONS LISTED IN THE SUPPLEMENTAL INFORMATION; DUE PROCESS MANDATES RESENTENCING BECAUSE A) THE COURT RELIED ON THIS INACCURATE INFORMATION.

V.   MR. GIBSON MUST BE RESENTENCED AS A MATTER OF DUE PROCESS BECAUSE SENTENCING GUIDELINE OV 3 WAS ERRONEOUSLY SCORED AT TEN POINTS BECAUSE THERE WAS NO EVIDENCE THAT THE VICTIM NEEDED MEDICAL TREATMENT FOR HER SUPERFICIAL SCRATCHES; OV 10 WAS ERRONEOUSLY SCORED AT 15 BECAUSE THERE WAS NO EVIDENCE THAT MR. GIBSON ENGAGED IN PREOFFENSE VICTIMIZATION CONDUCT AND OV 19 WAS ERRONEOUSLY SCORED AT FIFTEEN POINTS BECAUSE THERE WAS NO EVIDENCE THAT MR. GIBSON ACTUALLY USED OR THREATENED TO USE FORCE AND BECAUSE CORRECTING THESE ERRORS LOWERS THE RECOMMENDED SENTENCING RANGE.

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

## II. Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

Recently, in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the United States Supreme Court stated: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The Court further stated:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.
>
> *Harrington*, at 786–87 (internal citation omitted).

A federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

### III.  Discussion

**A.  DID THE PROSECUTOR DENY MR. GIBSON HIS FIFTH, SIXTH AND FOURTEENTH AMENDMENTS RIGHT TO PRESENT A DEFENSE AND TO TESTIFY WHEN SHE ARGUED, WITHOUT ANY CAUSE SPECIFIC SUPPORT, THAT HE WAS THE ONLY TESTIFYING WITNESS WHO HAD A MOTIVE TO LIE?**

Petitioner first contends that the prosecutor violated his right to a fair trial when she argued that petitioner was the only witness who had a motive to lie.

The Michigan Court of Appeals rejected petitioner's claim:

> Here, the prosecutor argued that the victim, D.F., had no motive to lie regarding her allegation that defendant had sexually assaulted her. Specifically, the prosecutor relied upon the evidence provided by Emma Linzy, a sexual assault nurse examiner, regarding the procedures used to collect evidence following an alleged sexual assault, and argued that if D.F.

8

2:11-cv-10604-AJT-CEB   Doc # 13   Filed 09/18/12   Pg 9 of 19   Pg ID 675

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

had fabricated her claim that she did not consent, it was likely that D.F. would have terminated her examination when the procedure became uncomfortable. However, the prosecutor argued further, because D.F. continued to undergo the sexual assault examination, which involved pulling her pubic hair, a vaginal examination and an anal swab, she had no motive to fabricate her testimony.

Conversely, defendant, during closing argument, argued that D.F. could have been motivated to fabricate:

> This is what happened. They had consensual sex in the park, that's all it was. It was no more or no less, and somehow this woman ended up on this treadmill because of what happened. At the hospital her boyfriend's saying, well, you know, you're all upset, you better go down and do this. Maybe she just didn't want to tell her boyfriend what she had done. Maybe she thought it was gonna impact the surgery she was having the next day. I don't know, she didn't say, but it-it was consensual sex, that's what it was.

Under these circumstances, the issue for the jury to decide was whether defendant's DNA was present in D.F. as the result of consensual sex, or as the result of criminal sexual conduct. The prosecutor argued, from the evidence, that because D.F. had no reason to fabricate her allegation, defendant was the only witness that was motivated to lie. On the other hand, defendant contested the prosecutor's contention that defendant was the only person that was motivated to lie when he argued that D.F. did, in fact, have a motive to fabricate. In other words, while the prosecutor argued that defendant had a reason to fabricate his testimony based upon the evidence relating to the detection of his DNA in D.F., and D.F. had no reason to fabricate, defendant argued that D.F. did, in fact have a reason to lie.

*Gibson,* Slip. Op. at * 2.

The Michigan Court of Appeals further ruled that even if the prosecutor's comments were improper, any error was cured by the judge's instructions to the jury to decide the case solely on the basis of the evidence, and that the attorneys' closing arguments, as well as the fact that defendant was charged with a crime, were not evidence. With respect to the credibility of the witnesses, the trial court instructed the

9

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

jury to consider whether each witness had "any special reason to tell the truth or any special reason to lie[.]" *Id.,* at * 3.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).

10

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

If a defendant testifies, a prosecutor may attack his credibility to the same extent as any other witness. *See United States v. Francis,* 170 F. 3d 546, 551 (6th Cir. 1999). A prosecutor may argue that a defendant is lying during her closing argument "when emphasizing discrepancies between the evidence and that defendant's testimony." *Id.* To avoid any impropriety, however, the prosecutor's comments must "reflect reasonable inferences from the evidence adduced at trial." *Id.* (internal quotation omitted).

In the present case, the prosecutor's comments about petitioner having a motive to lie were made in connection with her argument that the victim had no motive to lie, in light of the uncomfortable and embarrassing sexual assault examination that she had to endure.  The prosecutor's remarks reflect reasonable inferences from evidence adduced at trial, and thus it was not improper for the prosecutor to suggest that petitioner had a motive to lie. *See United States v. Johnson,* 169 Fed. Appx. 946, 950 (6th Cir. 2006)(government's comment during closing argument of tax fraud trial that defendant was lying to the jury was not improper, since defendant had testified at trial and his testimony contradicted other witness testimony).

More importantly, there was significant evidence presented at trial to call into question the credibility of petitioner's story that the victim had consented to have sex with him.  In addition to the victim's testimony, Scott Rice testified that petitioner had admitted to raping the victim and had also solicited him to murder her.  Detective Ansel testified that petitioner never indicated that he had consensual sex with the victim.  In light of this contradictory evidence, it would have been permissible for the prosecutor to

11

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

argue that the jury should infer that petitioner was not credible.  The prosecutor's

argument that petitioner had a motive to lie, even if improper, was not flagrant, as

required to grant petitioner habeas relief, because the difference between what the

prosecutor actually said and what the prosecutor could have permissibly said, which

was that contradictory evidence suggested that petitioner's testimony was not credible,

was minimal. *See U.S. v. Stover,* 474 F.3d 904, 916 (6th Cir. 2007).

Petitioner is not entitled to habeas relief on his first claim.

> **B.    WAS MR. GIBSON DENIED HIS SIXTH AMENDMENT
> RIGHT TO COUNSEL WHEN AFTER MR. GIBSON HAD
> BEEN ARRAIGNED AND COUNSEL APPOINTED,
> DETECTIVE ANSEL PURPOSEFULLY ASKED A JAIL
> PRISONER TO WEAR A RECORDING WIRE AND
> ENGAGE MR. GIBSON IN CONVERSATION ABOUT
> THIS CASE AND WHEN THE PROSECUTOR RELIED ON
> ANSEL'S TESTIMONY DESCRIBING MR. GIBSON'S
> RECORDED STATEMENTS OBTAINED THEREIN AS
> EVIDENCE OF MR. GIBSON'S GUILT?**

Petitioner next claims that the prosecution violated his Sixth Amendment right to

counsel when it used an inmate, acting as a governmental agent, to elicit and record

incriminating statements by petitioner without the benefit of counsel and after judicial

proceedings had been formally initiated against petitioner.

Once a defendant's Sixth Amendment right to counsel has formally attached, a

defendant is denied that right when law enforcement officials "deliberately elicit"

incriminating statements from him in the absence of his lawyer. *Massiah v. United*

*States,* 377 U.S. 201, 206 (1964).  However, the Sixth Amendment does not forbid the

admission of a criminal defendant's statements to a jailhouse informant who may be

12

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

placed in close proximity to the defendant in jail but who makes no effort to initiate or to stimulate conversations about the crime with which the defendant is charged. *See Kuhlmann v. Wilson*, 477 U.S. 436, 456 (1986).  A defendant's Sixth Amendment right to counsel is "is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached. " *Maine v. Moulton*, 474 U.S. 159, 176 (1985).  A criminal defendant thus does not show a violation of his Sixth Amendment right to counsel merely by showing that an informant, either through a prior arrangement with the police or voluntarily, reported his incriminating statements to the police. *Kuhlmann,* 477 U.S. at 459.  *Massiah* is concerned with secret interrogation by investigatory techniques which are considered the equivalent of direct police interrogation.  A defendant must therefore demonstrate that the police and their informant took some action, beyond merely listening, which was designed deliberately to elicit incriminating remarks from the defendant. *Id.*

Petitioner has failed to show that Scott Rice was acting as a government agent when petitioner made his initial incriminating remarks to him or that Rice had undertaken any action that was deliberately designed to elicit these incriminating remarks from petitioner.  Because the evidence establishes that Rice merely listened to petitioner's confession without encouraging it or otherwise eliciting it, the use of petitioner's initial confession to Scott Rice did not violate defendant's right to counsel. See *Post v. Bradshaw,* 621 F.3d 406, 424-25 (6th Cir. 2010).

Moreover, with respect to the admission of petitioner's comments to Scott Rice about procuring the victim's murder, there was no Sixth Amendment violation because

13

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

petitioner had not yet been charged with that crime.  The Sixth Amendment right to counsel "is offense specific."  The right cannot be invoked once for all future criminal prosecutions, for the right does not attach until a prosecution is commenced, that is, "'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)(quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)(quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).  It is thus not a violation of *Massiah* for an informant to talk to a defendant about a criminal offense that a defendant has not yet been charged with. *See United States v. Ford*, 176 F.3d 376, 380 (6th Cir. 1999).

Finally, although the police ultimately enlisted Rice to record further conversations with petitioner concerning the rape, the audiotaped recording of these conversations was not actually admitted at trial.  *Massiah* violations are subject to harmless-error analysis. *See, e.g., Milton v. Wainwright*, 407 U.S. 371, 372-73 (1972) (applying harmless error analysis to a *Massiah* violation).  In light of the admissible evidence against petitioner in this case, any attempt by the police to violate petitioner's Sixth Amendment right to counsel was harmless error.  Petitioner is not entitled to habeas relief on his second claim.

14

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

**C.    MR. GIBSON WAS DENIED DUE PROCESS WHEN THE PROSECUTOR INTENTIONALLY WAITED TO AFTER HE HAD TESTIFIED TO OFFER IN REBUTTAL ANSEL'S TESTIMONY REGARDING MR. GIBSON'S EFFORTS TO HAVE [THE VICTIM] KILLED EVEN THOUGHT IT WAS THE PROSECUTOR WHO INTRODUCED THIS MATTER IN HER CASE IN CHIEF AND EVEN THOUGH MR. GIBSON OFFERED NO TESTIMONY WHATSOEVER ON THIS ISSUE.**

Petitioner next alleges that it was improper to call Detective Ansel in rebuttal to testify about petitioner's efforts to have the victim killed, rather than introducing this evidence in the prosecution's case-in-chief.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000). Petitioner's claim that Ansel's testimony was inappropriate rebuttal testimony is not cognizable on federal habeas review, because it involves a violation of state evidentiary rules. *See Slack v. Cason,* 258 F. Supp. 2d 727, 733 (E.D. Mich. 2003).

15

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

**D.    MR. GIBSON WAS WRONGFULLY CONVICTED AND
SENTENCED TO A 444 MONTH MINIMUM SENTENCE
AS A FOURTH HABITUAL OFFENDER BECAUSE THE
UNDERLYING ACT FOR THE PRESENT CONVICTION
OCCURRED PRIOR TO THE TWO RESISTING AND
OBSTRUCTING CONVICTIONS LISTED IN THE
SUPPLEMENTAL INFORMATION; DUE PROCESS
MANDATES RESENTENCING BECAUSE A) THE COURT
RELIED ON THIS INACCURATE INFORMATION.**

Petitioner next contends that he was improperly convicted and sentenced as a

fourth felony habitual offender, because he had only two, as opposed to three prior

felony convictions that could be used to charge him as an habitual offender.

The Michigan Court of Appeals agreed with petitioner's claim and remanded the

case for re-sentencing as a third felony habitual offender.  On remand, petitioner was

re-sentenced as a third habitual offender.  The state court's decision to re-sentence

petitioner in conformance with Michigan law thus moots petitioner's habitual offender

claim. *See Hill v. Sheets,* 409 Fed. Appx. 821, 824-25 (6th Cir. 2010).

16

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

**E.     MR. GIBSON MUST BE RESENTENCED AS A MATTER OF DUE PROCESS BECAUSE SENTENCING GUIDELINE OV 3 WAS ERRONEOUSLY SCORED AT TEN POINTS BECAUSE THERE WAS NO EVIDENCE THAT THE VICTIM NEEDED MEDICAL TREATMENT FOR HER SUPERFICIAL SCRATCHES; OV 10 WAS ERRONEOUSLY SCORED AT 15 BECAUSE THERE WAS NO EVIDENCE THAT MR. GIBSON ENGAGED IN PREOFFENSE VICTIMIZATION CONDUCT AND OV 19 WAS ERRONEOUSLY SCORED AT FIFTEEN POINTS BECAUSE THERE WAS NO EVIDENCE THAT MR. GIBSON ACTUALLY USED OR THREATENED TO USE FORCE AND BECAUSE CORRECTING THESE ERRORS LOWERS THE RECOMMENDED SENTENCING RANGE.**

Petitioner lastly contends that several of his offense variables under the Michigan Sentencing Guidelines were incorrectly scored.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *See also Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001).  "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his guideline score or in departing

17

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

above his sentencing guidelines range alone would not merit habeas relief. *Id.*
Petitioner is not entitled to relief on his fifth claim.

### F. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to
appeal the denial of a habeas petition for relief from either a state or federal conviction.
28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has
made a substantial showing of the denial of a constitutional right." 28 U.S.C. §
2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the
substantial showing threshold is met if the petitioner demonstrates that reasonable
jurists would find the district court's assessment of the constitutional claim debatable or
wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this
standard by demonstrating that ... jurists could conclude the issues presented are
adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.
322, 327 (2003).  In applying this standard, a district court may not conduct a full merits
review, but must limit its examination to a threshold inquiry into the underlying merit of
the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would
not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the
standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a
lower standard than the standard for certificates of appealability. *See Foster v.
Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v.*

18

*Gibson v. Curtin,* U.S.D.C. No. 2:11-CV-10604

*Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

### IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Ballinger is not entitled to federal-habeas relief on the claims presented in her petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1).

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.   IT IS FURTHER ORDERED that petitioner will be granted leave to appeal *in forma pauperis.*

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: September 18, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of parties/record on September 18, 2012, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

19